By the Court.—Sanford, J.
The conclusions of *260 law, arrived at by the learned judge before whom this cause was tried, seem to have been fairly and properly deduced from his findings of fact; and although exception was taken by the appellant to such conclusions, and each of them, it was not urged on the argument, nor is it contended in the brief submitted by his counsel, that they involved legal error, except in so far as they may be shown to have been based upon findings of fact, either contrary to, or unsupported by the evidence in the case. Where material findings of fact are contrary to undisputed evidence, or are wholly unsupported by proof, they must of course be rejected, and conclusions of law deduced from and depending upon them, will, in such case, be deemed erroneous and fall with them. But when evidence is conflicting, the findings of the court or a referee, like the verdict of a jury, will be sustained, unless the preponderance of adverse proof is such as to warrant the inference of an obvious mistake, or of bias, partiality or intentional wrong. In this case, some of the material facts found are undisputed ; with respect to others, there is conflict and contradiction; and there are findings, not material, which, perhaps, the evidence in some degree fails to support. The defendant’s motion for a new trial calls upon us to pass the whole case in review, as well upon questions of fact as of law. After a careful examination of every evidence, I have arrived at the conclusion that all the finding of fact, essential to the maintenance of the judgment, is fully sustained, either directly or by necessary inference and by competent proof. It sufficiently appears that the plaintiffs, as assignees of the defendant’s lessee, were interested in and held the legal title to the demised premises; that White, the original lessee, acted as their agent and attorney, in the collection of the rents from under tenants ; that by arrangement with him, the defendant became himself the direct recipient of such rents, *261 which were largely in excess of the rent accruing under his own lease ; that from October, 1872, until after the summary proceedings were instituted, under and by virtue of which he claims to have resumed possession, and to have acquired back his former estate, he collected and received such rents from the under tenants, and accounted therefor, from time to time, deducting the ground rent due to himself, and a compensation for his services in effecting such collection, and paying over the balance to White, as agent and attorney of the plaintiffs; that in the latter part of May, or early in June, 1873, some embarrassing relations existed between White and his creditors, which occasioned annoyance to defendant. An order had been made for the examination of defendant before a referee, as to any property of White in his hands, and suits had been threatened for the enforcement of liens and other claims on the building which White had erected, on the demised premises, prior to the transfer of the lease to the plaintiffs. Under these circumstances, it was proposed that summary proceedings should be instituted by the defendant, as in case of default for nonpayment of rent, and that any future annoyance of the like character should in this way be avoided. The evidence is conflicting as to whether the proposition emanated from White or from the defendant. The negotiations were conducted partly by correspondence, and partly through Mr. Sheldon, who had long been the attorney and counsel of the defendant, as well as of White, and who then occupied that confidential relation towards both of them.
White testified that defendant requested him to see Sheldon, and arrange it in some way ; that he thereupon called on Sheldon, who suggested a dispossession by summary proceedings as the best means of relieving defendant from annoyance; that he objected, on the ground that it would place himself and his friends *262 entirely in the defendant’s power, but on Mr. Sheldon assuring him that defendant would do nothing to injure him or his friends, he finally consented. On the other hand, the defendant testified that White referred him to Sheldon, and that Sheldon advised the dispossessing proceedings, promising that he should have no trouble in the matter. “I shall take the proceedings to dispossess the tenants,” he said, “and you make new leases to the under tenants, collect the rents, as you have done, and pay the balance over to me,” he acting for Mr. White. Both sides agree in this, that the dispossessing proceedings were not originally intended to give defendant any right to the surplus rental in excess of the amount to which he was entitled under the original lease, and that defendant, as well after the execution of the warrant as before, was to account for and pay over such surplus to the lessee or his assigns. But on June 10, 1873, the defendant wrote White, assuring him that any movements, he (the defendant) might make, would be for his interest, and would do him no harm. Again, under date of June 13, he acknowledges White’s letter of the 11th, which he fails to produce, and adds : “ 1 have succeeded in collecting the entire rent due this month; have deducted ten dollars from the entire amount, and handed the balance to Mr. Sheldon as the agent of those who hold the lease, leaving my rent unpaid, so as to enable me to dispossess next Monday, cutting off these leases, &c. . . . You will always be treated right by me.” Yours truly, “Jacob Vanderpoel.”
The summary proceedings were thereupon instituted, and the defendant was thereby reinstated in possession of the demised premises, ostensibly as of his former estate. But, from that time until the spring of 1874, he continued to collect the rental accruing from under tenants, and after reserving to himself his *263 ground rent, the taxes, his commissions for collecting, and the expenditures made by him for repairs, to pay over to Sheldon, for White as agent of the plaintiffs, “ ownsrs of the lease,” the surplus remaining of the amo ant thus collected. On February 28, 1874, he stated the account, by crediting himself with his ground rent, the taxes, and other items above specified, as well as with the several payments made by him to Sheldon, on account, after October 1, 1873, and charging himself with the rents collected by him from under tenants during the same period. The account thus stated is settled and balanced by crediting him, under date of February 27, 1873, with his check to Sheldon, for one hundred and eighty-five dollars and thirty-eight cents. That check was produced by him, and put in evidence by the plaintiffs, and it appears to have been drawn to his own order, and then endorsed by him to the order of Sheldon, “in full for all matters pertaining to Madison Avenue and Thirtieth Street to this date.” Sheldon endorsed the check over to White, who received it, on account of the rent of those premises, as he had previously received other checks of 'Vanderpoel, also charged in the same account stated. As late as April, 1874, a correspondence occurred between White and the defendant, in which the latter recognized his obligation to account for the rents of the property collected by him, and treated White as the representative of the parties owning the lease. On the 9th of that month, replying to White’s letter of the 8th, requesting him to make up his bill to Mr. Elverson, one of the plaintiffs, on all he had against the property, that the whole matter might be settled up, he wrote that he would do so with pleasure, and send a full statement upon the completion of certain work which he was then doing, and he promised, in future, to remit any surplus *264 direct, and not through Sheldon as had theretofox* been done.
The evidence in the case is very voluminous and fully establishes the invalidity as against the plaintiffs, of the summary proceedings to dispossess. The findings of the court are in accordance with the evidence, in all essential particulars. It is true that in the teruh finding, which relates to the summary proceedings instituted by defendant, the affidavit of default in the payment of rent is stated to have been made by him ; and the eleventh finding is to the effect that, in said affidavit, the defendant falsely alleged and swore that said rent was unpaid. The record of the proceedings was not produced at the trial, or, at least, is not contained in the case, and it nowhere appears, unless by inference, that the affidavit referred to was made by the defendant personally. It is of course wholly immaterial whether the affidavit was made by the defendant, as landlord, or by some one acting on his behalf. It was quite unnecessary for the purposes of this case to aggravate the wrong done by the defendant in attempting to deprive the plaintiffs of their property, without compensation, by imputing to him the commission of perjury, as one of the instrumentalities through which the wrong was sought to be perpetrated. Such an affidavit must necessarily have been made by some one, and as the proceeding appears to have been instituted by the defendant, and prosecuted at his instance and by his direction, the inference was a natural although perhaps not a necessary one, that it was made by himself. The evidence does not conclusively establish this fact, but the character of the proceeding itself as a fraud upon the plaintiffs is wholly unaffected by this question. The defendant is seeking to take an undue advantage of these proceedings, which were permitted and consummated without opposition, on the faith of his assurances that no harm should ensue *265 therefrom. This he should not be permitted to do, quite irrespective of the question whether the affidavit, upon which the summons on such proceeding was issued, was made by Mm or by some one else, acting as his agent and on his behalf. His attempt to retain the property for his own exclusive use, and to prevent its enjoyment by the plaintiffs, is iniquitable and unconscionable. It involves a breach of that trust and confidence which he had himself solicited, and which was reposed in him by the agent of the plaintiffs. I am, therefore, of the opinion, that the error of the learned judge, if it be one, in finding that the affidavit in question was made by the defendant, does not call for a reversal of the jndgment, and that such finding may be wholly disregarded and rejected without affecting the final result.
Exceptions were taken, during the progress of the trial, to the admission, but none to the exclusion, of testimony. Possibly irrelevant, immaterial, and even incompetent evidence, may have been received, under defendant’s objections. If so, no harm can be deemed to have ensued, if, upon the evidence to which no objection was made, the final result must have been the same. It was urged that the deposition of Elverson, taken de bene esse, ought not to have been received, for the reason that sufficient notice was not given to enable the defendant to attend upon his examination. I do not think that the statute is to be construed as requiring such notice to be given as will enable the adverse party to be present, in person, in all cases, upon the examination of a witness, de bene esse, oras requiring such notice to be served personally upon him. His counsel attended and subjected the witness to a searching cross-examination. Under these circumstances, it would, in my judgment, have been error to exclude the deposition. The statute provides that the time of taking-the examination shall be fixed with ref *266 erence to the exigency of the case, and as “ the residence of the adverse party, or Ms attorney will allow, in order to afford sufficient opportunity to attend ” (2 R. S. 392, § 3). The subsequent provision (2 R. S. 398, § 8), that the reading of the deposition may be prevented by the party against whom it is to be used, upon satisfactory proof that sufficient notice was not given to enable him to attend, must be construed in connection with what precedes, and as referring to the attendance of the party, either in person, or by attorney. Besides, if the defendant desired to prevent the reading of the deposition, on this ground, he ought to have moved promptly for an order to suppress it, in which case the plaintiffs might have been able to secure the attendance of the witness again, or, at all events, to have obtained his testimony by commission. It was for the interest of the defendant that the deposition should be taken orally rather than by commission (Jackson v. Kent, 7 Cowen, 59); and as opportunity was not only afforded, but availed of, for his attendance by counsel and for a full oral cross-examination, he ought not to be heard in derogation of the notice.
I think the evidence of Sheldon’s authority to rep-res nt the defendant, in all matters relating to the summary proceedings, quite sufficient to warrant the admission in evidence of his conversations with White in reference thereto. As White testifies, he was requested by defendant to see Sheldon, and arrange in some way. The verbal arrangement made in pursuance of this direction, was properly received in evidence. The testimony of White, as to what Sheldon said about the execution of the new lease, after the dispossessing proceedings had been taken, is quite immaterial, and could not have affected the result. If it be wholly rejected and disregarded, the case for the plaintiffs is still abundantly established. Indeed, the documentary evidence in connection with defendant’s- own testimony, *267 is all that is needed to show that he has acted in bad faith. I am of opinion that the rulings of the court upon questions of evidence were correct, and that no tenable exception was taken thereto; but, however this may be, there is ample evidence in the case, to which no objection or exception was taken, to support the judgment, and all the essential findings and conclusions upon which it depends. I am satisfied that the judgment accords with the justice and equity of the case, and ought not to be reversed.
Judgment affirmed, with costs.
Curtis, J., concurred.